1   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF FLORIDA
2            GAINESVILLE DIVISION

3

    UNITED STATES OF AMERICA           CRIMINAL ACTION
4                                      NO. 1:14CR8-MMP
                                       December 4, 2014
5   v.

6   RYAN DAVID BURD.

7
                    Defendant.
8   _____/

9

10          TRANSCRIPT OF SENTENCING PROCEEDINGS

11       The above-entitled proceedings came on to be heard
    before THE HONORABLE MAURICE M. PAUL, SENIOR UNITED STATES
12  DISTRICT JUDGE.

13
    APPEARANCES:
14
    FOR THE GOVERNMENT:
15                          MR. FRANCIS T. WILLIAMS
                            Assistant United States Attorney
16                          Office of the United States Attorney
                            300 East University Avenue, Suite 310
17                          Gainesville, Florida 32601

18  FOR THE DEFENDANT:
                            MR. DARREN J. JOHNSON
19                          Assistant Federal Public Defender
                            Office of the Federal Public Defender
20                          101 SE 2nd Place - Suite 112
                            Gainesville, Florida 32601
21

22  REPORTED BY:            CHRISTINE E. BORDENAVE, RPR
                            U.S. Official Court Reporter
23

24  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.
25

     (In open court with the defendant and all parties present at 10:31 a.m.)

THE COURT: Be seated, folks. Good morning.

ALL ATTORNEYS: Good morning.

THE COURT: Mr. Johnson.

MR. JOHNSON: Good morning, Your Honor.

THE COURT: How are you doing?

MR. JOHNSON: I'm fine. Thank you.

THE COURT: The matter set at this time this morning is the United States v. Ryan David Burd. Is this Mr. Burd?

MR. JOHNSON: Yes, sir, it is.

THE COURT: Mr. Burd, you were previously before this Court -- let me get the exact date -- on July the 7th of this year at which time you entered a plea of guilty to the offense of Count One of the indictment that charges you with attempted coercion and enticement of a minor by interstate commerce to engage in sexual activity with a minor. I now adjudge you to be guilty of that crime.

Do you or anyone on your behalf have any legal cause to show why we should not proceed to sentencing?

MR. JOHNSON: No, Your Honor.

THE COURT: The government?

MR. WILLIAMS: No, sir.

THE COURT: Mr. Burd, have you had the opportunity to read and have you in fact read the written presentence report

|   |   |
|---|---|
| 1 | that was prepared in this case? |
| 2 | THE DEFENDANT: Yes, Your Honor. |
| 3 | THE COURT: Did you discuss the content of that |
| 4 | report with your lawyer? |
| 5 | THE DEFENDANT: Yes, sir. |
| 6 | THE COURT: Mr. Johnson, after yourself reviewing the |
| 7 | report and discussing its content with your client, are there |
| 8 | now any factual matters reported therein as to which you may |
| 9 | take exception? |
| 10 | MR. JOHNSON: No, Your Honor. |
| 11 | THE COURT: The government? |
| 12 | MR. WILLIAMS: No, sir. |
| 13 | THE COURT: There being no objection to the PSI, Mr. |
| 14 | Johnson, do you, your client or anyone else wish to present |
| 15 | matters to this Court concerning the sentencing? |
| 16 | MR. JOHNSON: Yes, sir. |
| 17 | THE COURT: I read some 19 to 20-page packet you |
| 18 | filed. I read it yesterday or the day before. |
| 19 | MR. JOHNSON: Yes, sir. I believe it may have been |
| 20 | more extensive than that. There have been two filings. |
| 21 | THE COURT: That's the one I read that had the |
| 22 | mother's letter in it. |
| 23 | MR. JOHNSON: Yes, sir. That was the most recent. |
| 24 | Previously before this was continued last time we had filed -- |
| 25 | THE COURT: I read that one. I believe that had the |

1  mother's long letter in it.
2          MR. JOHNSON:  Yes, sir.  There's also a 50-page
3  packet including a number of letters, certificates, as well as
4  an audio recording of Mr. Burd's professional work.
5          THE COURT:  I understood there was an audio this
6  morning.  I didn't know it ahead of time, so I didn't hear the
7  audio.  I know one was filed.  I'm sorry about that.
8          MR. JOHNSON:  Has the Court had a chance to observe
9  that?
10          THE COURT:  No.  I didn't know it was filed until
11  about five minutes before I walked in here.  Explain it to me.
12          MR. JOHNSON:  Yes, sir.  What we have submitted is
13  the recording of both video and audio of Mr. Burd's
14  professional work.  As the Court may have derived from the
15  presentence report, Mr. Burd, at the time of this offense and
16  today, is a professional musician.  He is a percussionist who
17  holds a master's degree in that field.
18          THE COURT:  Yes, sir.  I remember all of that and I
19  read all of that.
20          MR. JOHNSON:  Yes, sir.  In addition to that, we have
21  submitted a number of certificates of Mr. Burd's, not only his
22  professional achievements but personal achievements as well as
23  volunteer work that he has performed throughout the course of
24  his life.  And that was what was in addition to the first
25  packet.  I don't have the docket entry.

THE COURT: I don't remember. But if it was filed before the first one, I read them all before the first one.

MR. JOHNSON: Yes, sir. In addition to that, Your Honor, I'm going to have Mr. Burd take a seat at this time at counsel table. I would like to have his sister, Jenna Streeter, come forward. I know she would like to address the Court, and then I'll have some remarks.

Ms. Streeter, if you can for the record, could you state your name and spell your last name.

MS. STREETER: My name is Jenna Burd Streeter, S-t-r-e-e-t-e-r.

MR. JOHNSON: And, Ms. Streeter, how are you related to Ryan Burd?

MS. STREETER: I'm his older sister.

MR. JOHNSON: And I know you have a statement to make to the Court, so you can go ahead and do that.

MS. STREETER: Thank you. I'm speaking on behalf of my family today.

THE COURT: Just take your time.

MS. STREETER: Kind, honest, passionate, talented, dedicated, ambitious and hard working. These words describe Ryan. He touched a multitude of students, friends, family and music lovers throughout his life, both with his talent and with his heart. Truly, Ryan is a man of deep moral fiber. Although I recognize that the events of February of 2014 do not show his

1  true nature, what they do show is that he is human, and we tend
2  to make mistakes.  Some mistakes are worse than others.
3  Sometimes we are not fully aware of the ramifications of our
4  decision.  As my husband always says, it never matters until it
5  matters.  Ryan is a brother, a son, a grandson, an uncle, a
6  boyfriend, a teacher of students and a friend.  His place in
7  society is carved out by an overall record of outstanding
8  citizenship and positivity.  Today I'm saddened that this lapse
9  in moral judgment forever marks my brother with the scarlet
10 letter C for criminal and an X.  Indeed, he is neither.  Thank
11 you.
12             THE COURT:  Thank you, Ms. Streeter.
13             MR. JOHNSON:  Your Honor, as you can tell, I also
14 have a number of family and friends here in support of
15 Mr. Burd.  Most, if not all of those folks in the galley, have
16 submitted letters on Mr. Burd's behalf.  And I don't want to
17 belabor the point because I think it becomes pretty clear
18 through the lengthy submission we put in before the Court, and
19 I'm not down cutting the seriousness of this offense because it
20 is quite serious, but I think picking up on what Ms. Streeter,
21 his sister, has just said that this lapse in judgment, which
22 was a criminal lapse, was a very big lapse, is but a speck in
23 the life of Ryan Burd.  Now he's not a very old person.  He's
24 an adult.  He is a young man, but he has a lot of living to go
25 forward.  If you take into account these actions against what

1   you have learned about him through the presentence report, what
2   we have put in before you in our submissions, but by just
3   taking a visual look at Ryan Burd, it is hard to put into
4   context a more glaring example of aberrant behavior in this
5   case.  It is hard to explain and it's hard to understand.  And,
6   quite simply, there is no explanation or understanding, and the
7   punishment is severe.  A ten-year mandatory minimum set by
8   Congress is a significant, long-life impacting punishment for
9   someone who has had no criminal involvement prior to this, who
10  didn't just glide through life or coast, has worked hard, has
11  touched the lives of many, is a passionate person.  It's just
12  hard to put into context, and I don't really envy the Court's
13  position in this case because you have a tough decision to
14  make.  You have a mandatory minimum that you have to impose,
15  and even if you wanted to go below it -- and I'm not saying the
16  Court would -- I would suggest it would be appropriate, if
17  authorized, but it's a really tough situation to put a person
18  of the character and background of Ryan Burd into prison for
19  ten years for his first-time offense.  Now, again, I'm not
20  undercutting the seriousness of the offense in any way
21  whatsoever.  But in looking at this person, the ten-year
22  mandatory minimum is going to be very significant.  And if I
23  could have argued for less, I certainly would have.  The
24  guidelines call for less, but the mandatory minimum is in place
25  and I would say that that would be appropriate under the

1  circumstances.  What little latitude the Court has in these
2  types of cases, I think, comes in with the supervision aspect
3  and that's where I think the Court should consider the
4  background of Mr. Burd, should consider his character, should
5  consider his lack of criminal history.  Certainly you have
6  authorized and available to you a lifetime of supervision.  I
7  don't think that that would be appropriate.  I think when you
8  take a look at the fact that he's going to have a felony
9  conviction, will have served ten years in federal prison, will
10 be required to register as a sex offender for the rest of his
11 life, that's certainly more than enough oversight.  I think the
12 minimum of five years or ten years of supervision would be more
13 than reasonable under the circumstances of this case.  Again,
14 like I said, Your Honor, I have not heard in my practice or
15 seen a more glaring example of aberrant behavior.  And I say
16 that looking at the person and looking at the offense itself.
17 I talked to Mr. Burd about the opportunity for him to address
18 the Court.  As you can understand, he's very emotional.  He did
19 submit his letter, Your Honor, and that was submitted, I
20 believe, a few days ago and it is dated December 1st and it is
21 unsigned but it is from Mr. Burd.
22          THE COURT:  I read it.
23          MR. JOHNSON:  That is his personal statement.  We
24 have nothing further.
25          THE COURT:  Thank you.  Does the government wish to

1  be heard?
2          MR. WILLIAMS: Yes, sir. Your Honor, I would call
3  one witness, the victim's father.
4          THE COURT: Certainly.
5          MR. WILLIAMS: Your Honor, this is A.H.'s father and
6  he has asked to address the Court.
7          THE COURT: Certainly. Go ahead, sir.
8          FATHER OF A.H.: This is hard for me, Your Honor.
9  Number one, this is my daughter. My daughter was 14 when he
10 came to her for sex, twice. And another thing, my daughter is
11 not a speck, and I don't appreciate the -- his lawyer calling
12 this whole situation a speck on his record. This is my
13 daughter we are talking about. He befriended my daughter at a
14 music function. There were middle and high school kids at this
15 music function, and he was like a celebrity to her. And for
16 him to do what he did or try to do what he did, is just
17 horrible. He went to the home twice to try and have sex with
18 her. And now we don't even leave her alone at the house
19 because he knows where her house is. And I just -- he's a
20 predator, and I don't believe -- to me, ten years isn't good
21 enough and for the five years that they are talking about, with
22 five years probation or ten years probation, I think is a joke.
23 And I honestly believe people like him can't be rehabilitated.
24 I think that this will continue if he stays out. And in my own
25 words, the whole thing sucks. I just love my daughter with all

1  of my heart. And for somebody to try to take away her
2  innocence like he did just tears my heart up. And I just can't
3  believe that another human being would even attempt to do
4  something to a child like that. It just -- I just don't
5  understand it. I don't understand it. And that's all I have,
6  Your Honor.
7        THE COURT: Thank you, sir.
8        MR. WILLIAMS: Your Honor, this case is unique. Sir,
9  this case is different than the vast majority of cases that are
10 presented to this Court. Sir, this case isn't the result of a
11 predator operation where law enforcement goes online and
12 depicts themselves as a child and then someone travels to a
13 home to have sex with a child and is apprehended by the police.
14 This isn't that kind of case, Judge. And in those cases, the
15 typical sentence is ten years. Sir, this involves a
16 29-year-old man who succeeded in enticing a 14-year-old child,
17 and he thought he did it twice. Judge, the thing that gets me
18 is the very fact that what he now offers in mitigation are the
19 very reason he was able to accomplish this crime against this
20 child. People put their trust in him. His family, his
21 friends, sir, his fellow band members that he travels across
22 the country with, the band directors that allow him to have
23 access to their children and; and, Judge, men like this
24 gentleman you just heard from who allowed him access to their
25 children. Sir, he used this trust to endear himself to a

14-year-old child, then targeted her to satisfy his own sexual lust, and that's it. Judge, this was not a mistake, sir. This was not a lapse in judgment. These were not the actions of a man of character. This was a deliberate, knowing, and willful act against a child. That's what it was, Judge. That's all I have to say, sir.

THE COURT: Thank you, Mr. Williams. Mr. Johnson?

MR. JOHNSON: Yes, sir. There are two things that I would request the Court to consider. First off, we would ask for a designation to a facility. We would ask for a designation to a low facility as close as possible to Hilton Head, South Carolina; secondly, given the circumstances of this case, the time that has lapsed with Mr. Burd's performance on bond, I would be asking for him to have the opportunity to self-surrender to a facility, given that his family lives in Hilton Head, given that we don't have a local federal detention center where Mr. Burd would have to be going to local jails until designated to a proper facility, I would ask for him to be allowed to self-surrender. In addition to that, I have nothing further. I think that I have outlined everything that I wanted to. But I would like to close with this thought, Your Honor. Again, I think it is always telling when we are here and it is important and, first and foremost, you have to consider the offense itself. But when you look at sentencing, as this Court has hundreds, if not thousands of times, the

1  crime is supposed to be coupled with the individual, and the
2  punishment is supposed to be directed at this individual as a
3  person. And I'm not saying that Ryan Burd didn't make probably
4  the largest mistake of his life. I'm not undercutting the fact
5  that a young girl, a young woman, a family, has been impacted
6  for the rest of their life. What I'm asking this Court to
7  consider, as it has to, is what kind of punishment is necessary
8  for this person as an individual. And what I would submit is
9  that the ten years is more, if not triple more, than what would
10 be necessary for this person, this type of person, this young
11 man that sits before you. And it wasn't a wolf in sheep's
12 clothing leading up to that incident. It is who he is as a
13 person, and we would stand by that. That's all we have.
14             THE COURT: Come up, Mr. Burd.
15             The Court determines the presentence report to be
16 complete, true and accurate. It is the judgment of this Court
17 that this defendant be committed to the custody of the Bureau
18 of Prisons to be imprisoned for a term of 120 months. I
19 determine this to be sufficient for the offense. It is a
20 mandatory minimum, but it is appropriate for the facts of this
21 case.
22             In addition thereto, I find that this defendant does
23 not have the ability to pay any fine, cost of incarceration or
24 supervision. They are waived.
25             In arriving at the sentence, the record should

reflect that I have considered the statute itself as well as the commission guidelines and policy statements.

Upon release from imprisonment, the defendant will be placed on supervised release for a term of 20 years. He is ordered to report in person to the probation office in the district into which he is released within 72 hours of his release from custody. While on supervised release he'll be bound by and shall comply with the standard conditions of supervision of this district as well as the following special conditions. That is, he'll not own or possess, directly or constructively, any firearm, dangerous weapon or any destructive device or ammunition. He will permit the probation officer to search his person, his property, his house, residence, vehicle papers, computer, other electronic communications and data storage devices or other media and the effects at any time for the presence of any child pornography. He will immediately cease all computer use, if directed by the probation officer, to search and/or investigate any suspected violation of computer monitoring conditions. He'll not own, possess, attach or use any computer modem, network device, software storage or peripheral device which has not been made known to the probation officer in advance. He may not purchase any computer, computer component or computer related equipment without prior approval of the probation officer and he shall be subject to computer monitoring as directed by that probation

officer. The defendant is prohibited from maintaining or creating an account on any social network and site that allows access to minor children or allows for the exchange of sexually explicit material or chat conversations and the like. This includes any other Internet site that advertises for sexual services in the form of personal services. He shall not use a webcam or any other hardware that allows for the exchange of video or photographs by live feed or video. He will not install new hardware, software or effect repairs on his computer system without receiving prior permission from the probation officer to do so. He will disclose and provide serial numbers to the probation officer for all data storage and server devices including the removal of storage devices. The defendant also will provide access to the storage device for inspection by the probation officer. The defendant may not purchase new devices or dispose of any existing storage device without prior approval of the probation officer. He will not use or possess any removable storage device or cellular telephone that allows Internet access without prior approval of his probation officer. He shall disclose all user names and passwords for all computer programs, including email accounts, to his probation officer. The defendant shall not create or use any email account without prior approval of the probation officer. He shall have no contact with minor children under the age of 18 in any form, direct or indirect, including but

not limited to, in person, by computer, telephone, letter or through another person without the approval in advance of the probation officer. Any such contact not approved in advance must be reported immediately to the probation officer. He shall not frequent locations where children under the age of 18 are likely to congregate. He shall maintain or actively seek employment. Also, his employer shall be informed of his offense and conviction to address third-party risks. He shall neither volunteer in or be employed by any organization or employer that would allow him access to minor children. The defendant shall register with the State Sex Offender Registration Agency in any state where he resides, is employed, carries on a vocation or is a student as directed by the supervising probation officer. He'll provide state officials with any and all information required by the State Sex Offender Registration Agency and may direct the defendant report to that agency personally for additional processing such as photographing or fingerprinting.

        The defendant shall participate in a program of mental health counseling to include sex offender treatment and/or evaluation as may be directed by the probation officer. He shall be required to waive his right to confidentiality while involved in such treatment. And the defendant may be required to pay or contribute to the cost of said services based upon his then financial ability to do so.

           He shall also be required to submit a periodic polygraph and/or computer voice test analysis as may be directed by the probation officer as a means to ensure that he is in compliance with the requirements of his supervision of treatment.

           So the total sentence imposed by this Court is 120 months, ten years imprisonment, followed by 20 years of supervised release.

           I impose, also, a $100 special monetary assessment as required by law which is due immediately.

           Mr. Burd, you do not have the right to appeal this judgment and sentence. You gave that right up when you pled guilty, except as to an illegally imposed sentence. Any appeal to which you may be entitled, you must exercise your right of appeal within 14 days of today's date. If you do not file a notice of appeal within 14 days of today's date, you lose your right to ever appeal. If you desire to appeal and you do not have the funds with which to prosecute that appeal, I would consider the appointment of a lawyer to represent you.

           Do you understand, sir, that you have only 14 days to file any appeal to which you may be entitled?

           THE DEFENDANT: Yes, Your Honor.

           THE COURT: On the request for designation, I generally don't make a request in these matters. I leave that to the Bureau of Prisons because it has been my experience that

1  they try to locate him in the type of facility that the
2  conditions warrant and as near to his home as possible.
3             On the question of self-surrender, I would ask the
4  government's position.
5             MR. WILLIAMS:  Sir, may I address another issue and
6  back off of that?
7             THE COURT:  Sure, you can.
8             MR. WILLIAMS:  Sir, first, I would ask for the
9  additional condition that he have no contact with A.H., either
10 directly or indirectly.
11            THE COURT:  I should have done that.  He is directed
12 to have no contact directly or indirectly by other persons or
13 mail or any other way that you can think of with A.H.
14            MR. WILLIAMS:  And, sir, with respect to his
15 surrender, I objected to his release at the detention hearing
16 and I would continue to object to his release.  I believe that
17 I am opposed to self-surrender.  And, sir, I believe the
18 current state of the law is that absent showing an exceptional
19 or -- excuse me -- an extraordinary circumstance, he should be
20 detained at this time as a result of the crime committed.
21            THE COURT:  Mr. Johnson.
22            MR. JOHNSON:  What I would suggest, Your Honor, is to
23 to support our request, Your Honor, is the length of time he
24 has been out on bond, the fact that he does live in Hilton
25 Head, that he will most likely be designated to a facility

somewhere near the Hilton Head area which is going to be significantly further from the Northern District of Florida. Given the period of time that it is probably going to take to designate him, he will have to travel not only to a local jail here, he will have to go to the Federal Detention Center, it will probably be a roundabout way to the U.S.P. in Atlanta, what I would ask given the fact that he has been compliant, given the length of the sentence, that he be allowed to self-surrender. I do think that these are extraordinary circumstances that would meet the requirement of the statute. I think also it would be in line with similar requests for similarly situated defendants with similar criminal histories in the past. So under those circumstances, I would ask the Court to entertain our request. I don't think it would be unreasonable in this case.

THE COURT: The Court is going to allow self-surrender since he is on monitoring. The probation officer pointed out to me he has no idea where he will be designated, and it would be difficult for him to be monitored if he was in California. And we're not going to take that chance. He will be allowed to self-surrender, and he is ordered to report to the United States Marshal at the nearest marshal facility near Hilton Head, South Carolina, no later than 12 noon on the 9th day of January, 2015. He will remain under the same terms and conditions of bond previously imposed

1  by this Court.
2          Mr. Burd, if you violate any of the terms and
3  conditions of your bond or if you fail to surrender to the
4  United States Marshal on or before the 9th day of January of
5  next year, you will subject your bond to forfeiture, and that's
6  your mother and daddy's house, and you would subject yourself
7  to further criminal liability. Do you understand that, sir?
8          THE DEFENDANT: Yes, Your Honor.
9          THE COURT: Mr. Johnson, do you have any objection to
10 any matters that have transpired here today or are there
11 motions or objections now outstanding I have not addressed?
12         MR. JOHNSON: Yes, sir. I would lodge one objection
13 for purposes of the record on appeal to the length of the
14 supervised release imposed in the case, just based upon our
15 previous argument about his previous criminal history and
16 personal characteristics. I understand that the supervised
17 release term is within the recommended range or allowed range,
18 but just based upon what we argued to the Court previously, I
19 would object to the length of time.
20         THE COURT: Your objection is noted. Anything else
21 by the government?
22         MR. WILLIAMS: No, sir.
23         THE COURT: Do you need to see him? Do you want to
24 see him, Marshal?
25         THE MARSHAL: Yes, sir.

1     THE COURT: Before he leaves here today, he needs to
2  see probation and needs to see the United States Marshal.
3  We'll be in recess.
4     (Proceedings concluded at this time.)
5                    CERTIFICATE OF REPORTER
6
7     I, CHRISTINE E. BORDENAVE, Registered Professional
8  Reporter, certify that the foregoing is a correct transcript
9  from the record of proceedings in the above-entitled matter.
10 Any redaction of personal data identifiers pursuant to the
11 Judicial Conference Policy on Privacy are noted within the
12 transcript.
13
14 s/Christine E. Bordenave, RPR                      1/25/15
15 CHRISTINE E. BORDENAVE, RPR                          DATE